**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 12-cr-113 |
| | ) | |
| JAVON HARVEY, TERRELL WILLIAMS, | ) | |
| CARL THOMPSON, DEMETRIUS LEVY, | ) | |
| KEONTAE SPEARS, TIERONE BARNES, | ) | |
| RONALD GLASS, JAMIE ARGYLE, | ) | |
| AND DONTE NEWTON, | ) | |
| | ) | |
| Defendants. | ) | |

**OMNIBUS PRETRIAL MOTIONS ORDER**

Presently before the Court for disposition in this large heroin conspiracy case are numerous pre-trial motions which have been filed by Defendants. (ECF Nos. 154-156, 162-165, 173, 175-182, 184-185, 189, 191, 193, 196-208, 210-214, 262-264, 281-284, 286-292, 294-296, 318-320).[1] The government has filed numerous responses to the motions (ECF Nos. 219, 220, 302, 308, 310, 321, 322, 335), and has submitted numerous exhibits and an appendix filed under seal. The Court notes that some of the motions and governmental responses preceded the filing of the Superseding Indictment (ECF No. 221). Nevertheless, because the Superseding Indictment re-asserts many of the charges in the original Indictment, the Court will resolve all pending motions. On November 15, 2013, the Court held an evidentiary hearing and argument. The Court granted Defendant Harvey's request for post-hearing briefing, which was completed on January 19, 2014. The motions are now fully briefed and ripe for disposition.

---

[1]Defendant Brandon Wise has pled guilty and therefore his pretrial motions (ECF Nos. 210-212, 294-295) are **DENIED AS MOOT**.

Factual and Procedural Background

The charges in this case stem from a lengthy investigation of cocaine and heroin trafficking in Washington, Pennsylvania. The investigation included consensual phone intercepts, controlled purchases of drugs, Court-ordered Title III wiretap intercepts of cellular telephones, and confidential informants.[2] On April 25, 2012, the grand jury returned a 10-count Indictment in this criminal action, Criminal No. 12-113, which named nine persons as Defendants (Javon Harvey, Terrell Williams, Carl Thompson, Demetrius Levy, Keontae Spears, Tierone Barnes, Brandon Wise, Ronald Glass and Jamie Argyle). Count 1 charged all Defendants with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin from June 2011 through April 2012. Counts 2-10 charged Demetrius Levy with possession with intent to distribute and distribution of less than 100 grams of heroin on various dates.

On March 12, 2013, the grand jury returned a 16-count Superseding Indictment. All of the original Defendants were named in the Superseding Indictment. In addition, Donte Newton was newly named as a Defendant in the Superseding Indictment. Count 1 again alleges a heroin conspiracy against all Defendants (extending through May 2012), and Counts 2-10 re-allege the heroin possession/distribution charges against Levy from the original Indictment. Counts 11, 13 and 16 of the Superseding Indictment charge Harvey, Levy and Wise, respectively, with possession of a firearm/ammunition in furtherance of a drug trafficking crime. Counts 12, 14 and 15 of the Superseding Indictment charge Levy, Spears and Wise, respectively, with possession of a firearm/ammunition by a convicted felon.

---

[2]These wiretaps also led to criminal charges in Criminal Case No. 12-162, in which some of the persons in this case are named as Defendants.

Legal Background

The principles of law governing an alleged drug conspiracy against multiple

Defendants can be difficult to grasp.   The Third Circuit Model Jury Instructions regarding the

crime of "Conspiracy" illustrate the vast scope of the liability to which even a minor or tangential

member may be exposed.  "Conspiracy" is a criminal offense separate and apart from the

underlying drug possession/distribution offenses that were the alleged objectives of the

conspiracies in this case.  It is a federal crime for two or more persons to agree or conspire to

commit any offense against the United States, even if they never actually achieve their objective.

A conspiracy is a type of criminal partnership. In order to establish the crime of

conspiracy to distribute and possess with intent to distribute a controlled substance, the jury in this

case will be instructed that the government must prove each of the following elements beyond a

reasonable doubt:

> 1.	That two or more persons agreed to distribute and possess with the intent to distribute a controlled substance;
>
> 2.	That Defendant was a party to, or member of, that agreement;  and
>
> 3.	That Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

The government must prove beyond a reasonable doubt that two or more persons

knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or

unspoken, to work together to achieve the overall objectives of the conspiracy.  The government

does not have to prove the existence of a formal or written agreement, or an express oral

agreement spelling out the details of the understanding.  The government also does not have to

3

prove that all the members of the conspiracy directly met, or discussed among themselves their unlawful objectives, or agreed to all the details, or agreed to what the means were by which the objectives would be accomplished. The government is <u>not</u> required to prove that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known to one another. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

The government must prove that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives. However, the government does <u>not</u> have to prove that a Defendant knew everything about the conspiracy or that he/she knew everyone involved in it, or that he/she was a member from the beginning. The government also does <u>not</u> have to prove that he/she played a major or substantial role in the conspiracy. On the other hand, evidence which shows that Defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he/she was a member of the conspiracy even if he/she approved of what was happening or did not object to it.

The acts or statements of <u>any</u> member of a conspiracy are treated as the acts or statements of <u>all</u> the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy. Therefore, the jury may consider as evidence against a Defendant any acts done or statements made by <u>any</u> members of the conspiracy, during the existence of and to further the objectives of

the conspiracy. The jury may consider these acts and statements even if they were done and made in a Defendant's absence and without his/her knowledge.

There are different statutory maximum penalties for offenses involving different quantities of heroin: (40 years if the quantity is more than 100 grams but less than 1 kilogram; and life imprisonment if the quantity is more than 1 kilogram).[3] Therefore, the government must prove the amount of heroin involved in the alleged conspiracy beyond a reasonable doubt. However, it is the amount of heroin involved in the entire conspiracy charged – not the amount attributable directly to any individual Defendant – that must be so proven. *United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003). Once the jury makes a finding as to the drug quantity attributable to the conspiracy as a whole, the sentencing judge determines, by a preponderance of the evidence, the drug quantity attributable individually to each convicted Defendant. *Id.* If a Defendant is convicted of conspiracy, he/she is liable for the quantity handled by the entire conspiracy, not just the quantity of drugs he/she handled individually. *United States v. Barndt*, 2013 WL 3929041 at *3 (3d Cir. July 31, 2013) (non-precedential). *See generally United States v. Claxton*, 685 F.3d 300 (3d Cir. 2012) (discussing whether evidence was sufficient to prove drug conspiracy).

Legal Analysis

With that background, the Court turns now to the pending motions. The Court has elected to follow the "grouping" methodology used by the government in its Omnibus Responses as the most efficient and easiest to follow, for the convenience of all concerned. However, the

---

[3]Different statutory mandatory minimum penalties also apply.

Court will address the motions in a different sequence than that employed by the government. The Court further notes that some of the discovery motions filed by Defendants address multiple categories of information, and may be addressed in multiple sections of this Order.

1.     Motion for Joinder in Motions of Co-Defendants

Defendant Argyle has filed a motion to join in pretrial motions filed by other Defendants.  Blanket-type joinder motions create confusion and administrative difficulty for the Court.  Accordingly, the Court has adopted a standard practice by which any Defendant who aspires to join a motion filed by a co-Defendant must file a "separate statement of joinder" which establishes standing and a factual/legal basis for joint application before a joinder motion would be granted, even if the government does not oppose such motion.  *See* Order of January 18, 2013 (ECF No. 186) (denying generic-type joinder motions).

The government opposes the motion for joinder filed at ECF # 319 by Argyle in part, as untimely and unnecessary.  The Court acknowledges that as to some motions, Argyle's request for joinder was filed after the Court-ordered deadline.  On the other hand, one of the motions Argyle seeks to join had been filed the previous day.  The government has fully addressed both the suppression motions which Argyle seeks to join and the earlier suppression motion filed by Argyle himself at ECF No. 206.  Moreover, the motion for joinder at ECF ##319 does not change the issues or add complexity, and adequately explains why Argyle is similarly situated to the moving party.  The motion for joinder (ECF # 319) is properly supported, and therefore is **GRANTED**.

<u>2.</u>     <u>Motions to Suppress Wiretap Evidence</u>

The same wiretaps were at issue in the companion case of <u>United States v. Jordan,</u> <u>et al</u>, Crim. No. 12-162, and the Court denied similar motions to suppress the wiretap evidence filed by Defendants in that case. *See* Omnibus Opinion and Order dated October 7, 2013. The motions in this case raise essentially identical challenges to the sufficiency of the underlying affidavits of probable cause and an alleged lack of necessity for wiretaps due to the effectiveness of less-intrusive investigative techniques. Because the issues in this case are so closely-related, the Court will incorporate its ruling in the <u>Jordan</u> case largely verbatim. In addition, the Court will address Defendants' new contentions regarding the Ten Day progress reports.

There were four Court Orders at Miscellaneous Nos. 11-376, 376(a), (b) and (c) which authorized Title III wiretap intercepts of a total of five target telephones. The government's initial Application for a wiretap was presented to Judge Joy Flowers Conti of this Court on December 16, 2011. The government sought to intercept communications of Demetrious Levy, Will Levy, Terrell Percy Williams, Shannon Levy, Brandon Wise, Romone Barnes, and others, on a cellular telephone subscribed to by John Dingle and used by Demetrius Levy (Target Phone #1) for a period of thirty (30) days. The Application was supported by a 48-page Affidavit prepared by FBI Special Agent Michael Craig Evans. Judge Conti granted the Application on December 16, 2011 at Misc. No. 11-376.

The Court[4] issued three additional Orders on January 18, 2012, February 17, 2012 and March 22, 2012 (Misc. Nos. 11-376 (a)-(c), respectively) to authorize extensions/expansions of the wiretaps based on followup Applications/Affidavits. By these Orders, the government was

_____

[4]The February 17, 2012 Order at Misc. #11-376(b) was issued by Judge Arthur J. Schwab.

authorized to intercept communications with a cellular telephone subscribed to by Danyelle Levy and used by Will Levy (Target Phone #2), a Sprint cellular telephone with no subscriber information used by Terrell Williams (Target Phone #3), a T-Mobile cellular telephone with no subscriber information also used by Terrell Williams (Target Phone #4), and a cellular telephone subscribed to "IVR 1532473" and used by Juan Worthey (Target Phone #5). The Applications, Affidavits and Court Orders have been provided to Defendants.

Defendants contend that the wiretaps were obtained in violation of 18 U.S.C. § 2518 and were issued without probable cause, in violation of the Fourth Amendment. In particular, Defendants argue that the Affidavits failed to satisfy the "necessity" requirement because they did not establish a sufficient factual predicate as to why other traditional, less-intrusive law enforcement techniques were not sufficient. Defendants contend that traditional techniques, such as pen registers, surveillance, controlled purchases of drugs by confidential informants and surveillance had proven effective in this very investigation (as recognized in the Affidavits of Special Agent Evans), while other methods, such as trash pulls, search warrants, grand jury subpoenas and offers of leniency in exchange for cooperation, were not tried. Defendants point out that Demetrius Levy was told that the confidential source was working with law enforcement, but continued to deal with that informant anyway. They surmise that even though the government had a strong case against Demetrius Levy, they used him as an excuse to get a wiretap to go on a "fishing trip" to find other drug dealers. Defendants also contend that the "necessity" element was not independently satisfied for each of the successive wiretaps. In addition, Defendants contend that the Applications did not establish probable cause because they contained stale information, relied heavily on the affiant's past experience and contained only

vague and conclusory allegations as to the events of this case. The government contends that its Applications and the underlying Affidavits properly complied with the requirements of the wiretap statute and circuit precedent. *See United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997).

As an initial matter, the Court concludes that it need not conduct an evidentiary hearing on the motions to suppress wiretap evidence. The motions challenge the sufficiency of the information contained within the four corners of the Applications and Affidavits and have been thoroughly briefed. The conclusory allegations of Defendants Glass and Newton that (unspecified) informants were unreliable; the government omitted (unspecified) evidence; and the affidavit contained (unspecified) material misrepresentations – with no supporting evidence – do not merit a *Franks* hearing. The Court turns now to the substance of the parties' respective arguments.

The federal wiretap law, 18 U.S.C. § 2518(1)(c), requires that the affidavit in support of a wiretap application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The Court must then determine, on the basis of the application, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § (3)(c). *Williams* outlines a practical and commonsense review, in which the court may consider affirmations founded in part on the experiences of trained agents. 124 F.3d at 418. In each Order, the Judge expressly concluded that the probable cause and necessity elements were met. The issuing Judge found that

9

the government had adequately demonstrated that normal investigative procedures had been tried with limited success, appeared unlikely to succeed further or were too dangerous to attempt.

When a warrant is later challenged, a deferential standard of review is applied in determining whether the issuing judge had a "substantial basis" for issuing the warrant. *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993); *Illinois v. Gates*, 462 U.S. 213, 237 (1983). Upon review of the Affidavits of Special Agent Evans, this Court concludes that they contain sufficient averments regarding the effectiveness and limitations of traditional techniques during this investigation. For example, Special Agent Evans explained that traditional techniques had provided considerable intelligence of a wide-spread, ongoing narcotics operation, but had been unsuccessful in discovering the full scope of the operation and the identities of all individuals involved. The Affidavits discuss, in reasonable detail, the pros and cons of alternative investigative techniques, including telephone toll/pen register, search warrants, physical surveillance, trash pulls, informants and undercover agents (including that Demetrius Levy had been told that CS-2 was working with law enforcement), and grand jury subpoenas. Each of the subsequent Affidavits contained a similarly comprehensive discussion of alternative investigative techniques and the need for continued interception and/or initiation of intercepts on additional phones. In sum, the Court has no difficulty in concluding that the wiretap Applications, Affidavits and Court Orders complied with the statutory requirements.

Defendant Harvey also contends, albeit without citation to case law authority, that the wiretap evidence should be suppressed because the government has not produced evidence of its compliance with the Ten Day reporting obligation required by Judge Conti and 18 U.S.C. § 2518(5). In essence, Defendant reasons that the wiretap interception may have gone on longer

than necessary to achieve its objectives and may have exceeded the authorization. In response, the government contends that Defendants are not entitled to discovery of the Ten Day progress reports pursuant to Fed. R. Crim. P. 16(a)(2). The government further contends that Defendants are entitled to disclosure of only the court order and accompanying application, pursuant to 18 U.S.C. § 2518(9) and case law citations. The Court agrees with the government. Courts have uniformly held that such progress reports are not discoverable. *See, e.g., United States v. Pray*, 734 F. Supp.2d 158, 160 (D.D.C. 2010). In accordance with the foregoing, Defendants' motions to suppress the wiretap evidence (ECF Nos. 177, 184, 206, 214, 263, 282, 283, 288, 289, 318, 320) are **DENIED**.

3.  General Motions for Severance of Defendants

Defendants Argyle, Glass, Newton and Thompson contend, somewhat conclusorily, that their trials should be severed from those of the co-Defendants pursuant to Fed. R. Crim. P. 8 and 14. Defendants speculate that they may be prejudiced by the evidence adduced against more-culpable co-Defendants because the jury will be unable to separate the evidence against each Defendant, and that they may be deprived of the opportunity to confront the statements of co-Defendants. Glass speculates –without details -- that his co-Defendants may be willing to testify that he was merely a heroin user and not a co-conspirator. In these motions, Defendants have not met their heavy burden to demonstrate prejudice or to overcome the general interest in judicial economy for joint trials of Defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). The jury will be properly instructed to consider the guilt or innocence of each Defendant separately. These motions (ECF Nos. 204, 284, 290, 296) are **DENIED**.

4.     Argyle Motions for Severance and/or Witness Immunity

Defendant Argyle also filed a supplemental severance motion (ECF No. 286) and a Request for Witness Immunity (ECF No. 316). In the motions, Argyle proffered that co-Defendant Terrell Williams would provide exculpatory testimony if granted immunity – in essence, that Williams never conspired or distributed heroin with Argyle. The government filed a response in opposition to the motion, Argyle filed a reply, and the Court provided Argyle an opportunity to make an evidentiary record to support his position on this matter. Argyle did not present any testimony or evidence at the hearing and neither Terrell Williams nor his attorney attended the hearing. Instead, counsel for Argyle argued that his written proffer of Terrell Williams' anticipated testimony is sufficient.

Argyle cites the recent en banc decision of the United States Court of Appeals for the Third Circuit in *United States v. Quinn*, 2013 WL 4504647 (3d Cir. August 14, 2013), for the proposition that the government's refusal to grant immunity to co-Defendant Terrell Williams violates Argyle's due process rights. Argyle recognizes that the Court cannot grant judicial immunity to a co-Defendant.

Defendants face a difficult burden to prove the type of prosecutorial misconduct that would constitute a due process violation and justify the dismissal of charges against Argyle. As the Court of Appeals explained in *Quinn*:

> to prove a due process violation on the basis of the Government's refusal to immunize a defense witness, the defendant must show the following five elements. "[1] [I]mmunity must be properly sought in the district court; [2] the defense witness must be available to testify; [3] the proffered testimony must be clearly exculpatory; [4] the testimony must be essential; and [5] there must be no strong governmental interests which countervail against a grant of immunity."

*Id*. at *16.

As the government points out, the affidavit of Terrell Williams is vague, outdated, and denies engaging in a drug conspiracy with anyone. Counsel for Williams maintains that his client will not testify or waive his Fifth Amendment rights unless he is granted immunity. Thus, at most, the proffer is unspecific and conditional. Further, the government contends that any such testimony by Williams would not be clearly exculpatory because he can be impeached, would not be credible and would be undercut by the government's evidence. The government points to a strong countervailing interest to a grant of immunity to Williams, namely its intent to prosecute him for the crimes alleged against him in this case and the <u>Jordan</u> criminal action. In sum, Argyle has failed to satisfy all five prongs of the *Quinn* test. Accordingly, the severance and immunity motions of Argyle (ECF Nos. 286, 316) are **DENIED**.

     <u>5.</u>     <u>Motion to Dismiss Indictment</u>

Defendants Barnes seeks to dismiss the indictment because it does not provide information about how each satisfied the elements of a conspiracy crime. The government, in response, contends that this is a premature challenge to the sufficiency of its evidence. The Court agrees with the government. The Indictment is sufficient to charge Defendants with conspiracy, and they must reserve their challenge to the sufficientcy of the government's case until trial. Accordingly, Defendant's motion to dismiss indictment (ECF #287) is **DENIED**.

<u>6.</u>    <u>Motions for Bill of Particulars</u>

Defendants seek more particular information regarding the participants, drug quantities, alleged times, dates, places and actions of the conspiracy, and the specific roles and actions of each Defendant.    Federal Rule of Criminal Procedure 7(f) provides as follows:

> The Court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

A district court has broad discretion in granting or denying a criminal defendant's motion for a bill of particulars. *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989).  The purpose of a bill of particulars is to inform the defendant of the nature of the charge(s) brought against him or her so that the defendant is able to adequately prepare a defense.  *United States v. Addonizio,* 451 F.2d 49, 63 (3d Cir.), *cert. denied*, 40 U.S. 936 (1972).   The Court of Appeals for the Third Circuit has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial."  *Rosa*, 891 F.2d at 1066.  However, a defendant is not entitled to general discovery of the government's case, evidence or witnesses.  *United States v. Armocida,* 515 F.2d 49, 52 (3d Cir.), *cert. denied,* 423 U.S. 858 (1975).

A bill of particulars need reveal "only the minimum amount of information necessary to permit the defendant to conduct his own investigation."  *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).  In ruling on a request for a bill of particulars, the Court should consider all information that has been disclosed to the defendant in the course of the prosecution,

whether or not included in the indictment. *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir.), *cert. denied,* 490 U.S. 914 (1972). In this case, Defendants have been provided with the extensive Affidavits in support of the wiretap applications and the government represents that it has made other ongoing disclosures of evidence. Indeed, the gravamen of Porter's motion is that the government's disclosures of recordings have been too voluminous.

In exercising its discretion in this case, the Court concludes that a bill of particulars is not warranted. The government has provided substantial pretrial disclosures, the Superseding Indictment adequately apprises Defendants of the pending charges, and the alleged drug conspiracy is straight-forward and of relatively short duration. Although there are numerous alleged co-conspirators, it is not incumbent upon the government to prove the role(s) played by each Defendant. *United States v. Boffa*, 513 F. Supp. 444, 485 (D. Del. 1980) (citations omitted). Accordingly, the motions for a bill of particulars (#156, 165, 178, 181, 189, 198, 262, 291) are **DENIED**.

7.    Motions for Pretrial *James* Hearing

Defendant Argyle seeks a pretrial hearing to determine the admissibility of statements of alleged co-conspirators pursuant to Fed. R. Evid. 801(d)(2)(E). *See United States v. James*, 590 F.2d 575 (5th Cir. 1979); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). A *James* hearing is not required in every case, but is within the discretion of the Court. The government contends that such a hearing would be protracted, duplicative of the trial on the merits, is unnecessary, and is a backdoor attempt to obtain premature disclosure of its witnesses.

The government argues that the admissibility of co-conspirator statements should be decided at trial.

The Court agrees with the government that a pretrial hearing is not warranted under the facts and circumstances of this case. There is substantial evidence of the existence of a drug conspiracy in this case. Moreover, in *Government of Virgin Islands v. Brathwaite*, 782 F.2d 399, 403 & n.1 (3d Cir. 1986), the Court explained that "the prosecution must lay a foundation for the admission of co-conspirator testimony by establishing the existence of a conspiracy that included the defendant or defendants," but noted that there is a distinction between the crime of conspiracy and the "coconspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E)." In *United States v. Giampa*, 904 F. Supp. 235, 286 (D.N.J. 1995), the Court explained: "a practical evidentiary rule has developed whereby a co-conspirator's statement is conditionally admitted into evidence, subject to the Government's obligation to prove the conspiracy's existence and each conspirator's participation therein before the close of the Government's case." "In the event the Government fails sufficiently to connect the defendant to the conspiracy, the "connection up" rule of admitting co-conspirator statements can lead to a mistrial." *Id.* This procedure appears to be eminently practical in this case, and it will be the government's burden to "connect up" each Defendant at trial. Accordingly, the motion for a pretrial *James* hearing regarding the admissibility of co-conspirator statements (ECF No. 197) is **DENIED**.

8.    Motion for Pretrial Designation of Telephone Calls

Defendant Argyle asks the Court to require the government to identify which tape recordings it actually seeks to admit into evidence, and to provide transcripts (if any) which the government seeks to give to the jury.  Argyle recognizes that he has been given notice of the calls in which he participated personally, but contends that he is entitled to notice of all calls which the government intends to present to the jury to prove the alleged conspiracy.

The government represents that it has, upon request, provided defense counsel with a "detailed chart" regarding the calls involving that attorney's client, but objects to further pretrial disclosure.  It is the government – not the Defendants – who is in the best position to determine which tapes it intends to play for the jury.  Therefore, the burden is on the United States to identify the tapes it seeks to place into evidence, and to lay a proper foundation for their admission, in a timeframe that will not delay the trial.  Accordingly, no later than thirty (30) days before trial, the government shall provide notice to Defendants of all of the tape recordings it intends to use at trial, accompanied by the transcripts of each recording which the government intends to give to the jurors.  Within ten (10) days after receipt of such notice from the government, Defendants may file motions for an "audibility hearing" in advance of trial, if warranted, or other motions in limine.  If necessary, the Court will promptly schedule a hearing and endeavor to resolve the matter in advance of trial.

In accordance with the foregoing, the motion for pretrial identification of telephone calls (ECF No. 205) is **GRANTED** such that the government must provide notice to Defendants of the tape recordings and transcripts it seeks to present to the jury no later than 30 days before trial.

9.    General Discovery Motions

Discovery in a criminal case is far different from that in a civil case.  The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure.  Outside of Rule 16, the Jencks Act, and *Brady* and its progeny, however, a defendant has no general constitutional right to pretrial discovery.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Those rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation.  *United States v. Fiorvanti,* 412 F.2d 407, 411 (3d Cir.), *cert. denied,* 396 U.S. 837 (1969).  The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution."  *United States v. Ramos,* 27 F.3d 65, 68 (3d Cir. 1994).  Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine.  *Id.*  The Court appreciates, and in some circumstances shares, Defendants' frustration with these discovery limitations.  As a practical matter, defense counsel sometimes experience difficulty in advising their clients as to the advisability of a guilty plea in the absence of knowledge about the strength of the government's evidence.

At the outset, the Court notes that the government has repeatedly acknowledged its obligations under *Brady* and its progeny, *Giglio*, Federal Rules of Criminal Procedure 12 and 16, and the Jencks Act.  The government has also made the following representations:  (1) that it is willing to cooperate with any reasonable request by Defendants; (2) that it is unaware of any exculpatory *Brady* material pertaining to Defendants; (3) that it will voluntarily turn over Jencks

Act materials in its possession at least 14 days prior to trial[5]; (4) that it will turn over any impeachment materials at least 14 days prior to trial so that defense counsel can effectively cross-examine government witnesses;(5) that it will provide a written summary of any expert testimony at least 14 days prior to trial; (6) that it will provide any *Brady* impeachment material as to each trial witness at least 14 days prior to trial; (7) that it will preserve the rough notes taken by agents; and (8) that at least 14 days prior to trial it will inform Defendants of the general nature of any specific bad act evidence it will seek to introduce at trial pursuant to Fed. R. Crim. P. 404(b) and has already provided copies of their respective criminal records. The Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind." *Kyles v. Whitley,* 514 U.S. 419, 439 (1995).

The government also represents that it has already disclosed substantial amounts of evidence in this case to Defendants, including written and recorded statements of Defendants, copies of all of the wiretap intercepts, copies of the Applications, Affidavits and Court Orders pertaining to the wiretap intercepts and search warrants, Defendant-specific charts outlining pertinent calls (when requested), copies of agent reports and lab reports. Similarly, the government notes that its physical evidence has been available for review and it has invited defense counsel to meet with and question the government agents regarding their clients' alleged roles in the conspiracy.

---

[5]The United States offered to produce Jencks Act materials only seven (7) days prior to trial in its initial Omnibus Response. The Court appreciates the government's much more reasonable stance in the most recent Omnibus Response.

The Court turns now to the various categories of information sought by one or more of the remaining Defendants.

a.      Rule 404(b) Evidence

Defendants have requested the disclosure of evidence of other crimes, wrongs or acts that the government intends to introduce at trial, pursuant to Fed. R. Evid. 404(b) and 609. The government has stated that it has not yet identified the specific "bad act" evidence it will seek to introduce at trial, and notes that it has already provided Defendants with copies of their criminal records.  In addition, the government has represented that it is aware of its obligation and will provide such evidence at least fourteen (14) days prior to trial.  Presumably, this disclosure will encompass the Rule 404(b) evidence the government seeks to introduce against co-Defendants.  Accordingly, Defendants motions are **GRANTED AS UNOPPOSED**, in accordance with the government's representation.

Defendant Argyle seeks to exclude Rule 404(b) evidence.  This motion is premature and must await the further development of the record at trial.  Accordingly, ECF No. 203 is **DENIED WITHOUT PREJUDICE**.  A pretrial hearing is not warranted on this issue.

b.      Experts and General Discovery Obligations

The government anticipates that it will use expert testimony regarding testing of the drugs.  The government hopes to reach a stipulation with Defendants, such that no expert testimony is necessary.  The Court strongly encourages all sides to pursue such a stipulation.

As to general discovery, as noted above the government has acknowledged all of its legal obligations and has represented that it will comply with them. In addition, as recited above, the government has made numerous representations regarding its willingness to provide information in advance of the deadlines mandated by statute and/or rule. Defendants have not alleged a legal violation by the government. Accordingly, Defendants' motions are **DENIED**.

c.    *Brady* Exculpatory Material

Defendants request all material and information that may be favorable to them on the issues of guilt and/or punishment. Defendants correctly point out that this information must be viewed cumulatively. As noted *supra*, the government has represented that it is not aware of any exculpatory or *Brady* material pertaining to any Defendant. Accordingly, these motions of Defendants are **DENIED WITHOUT PREJUDICE**.

d..    Witness Impeachment Evidence

Defendants seek early disclosure of impeachment material pertaining to the credibility of the government's anticipated trial witnesses and/or non-witness declarants whose statements are to be offered into evidence. The government objects to any expansion of its discovery obligations beyond its legal requirements. As the government correctly notes, to require disclosure at this time of the requested information is tantamount to having the government identify its witnesses. The government is not obliged to provide a witness list in a non-capital case except in conformity with the Jencks Act, 18 U.S.C. § 3500, which requires the government to provide the defense with statements of witnesses that the government intends to call <u>at trial</u>.

The government recognizes that evidence which would tend to impeach the testimony and/or the credibility of a witness must be turned over so that defense counsel is able to effectively cross-examine that witness. Moreover, the government recognizes that strict compliance with the Jencks and *Brady* time limits could result in delay and has represented that impeachment materials relating to its trial witnesses will be provided at least 14 days prior to trial.

The government is reminded of the mandate from our appellate court that "prosecutors have an obligation to make a thorough inquiry of all enforcement agencies that ha[ve] a potential connection with the[ir] witnesses." *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2006) (*citing United States v. Thornton*, 1 F.3d 149, 158 (3d Cir. 1993)). *See also United States v. Reyeros*, 537 F.3d 270, 281 (3d Cir. 2008). Accordingly, Defendants' motions are **DENIED**.

    e.       Disclosure of Jencks Act Materials and Witness List

Defendants seek early disclosure of Jencks Act materials. The government has agreed to provide Jencks materials at least 14 days prior to trial and has no duty to do so sooner. Nor is the government required to provide its witness list in advance of trial. *United States v. Casseus*, 282 F.3d 253, 257 (3d Cir. 2002). Accordingly, these motions of Defendants are **DENIED**.

f.     Law Enforcement Notes

Defendants have sought preservation of the "rough notes" taken by law enforcement agents.  The government acknowledges its obligation to preserve such rough notes.  *United States v. Ramos*,  27 F.3d 65, 68-69 (3d Cir. 1994).

 To the extent that Defendants have also sought disclosure of the rough notes, the government objects to disclosure. The rough notes of law enforcement agents generally are not discoverable unless those notes, pursuant to Fed.R.Crim.P. 16(a)(1)(A), constitute the substance of oral statements of a defendant which the government intends to offer into evidence at trial, which statement was given in response to interrogation by a person then known by the defendant to be a government agent.  *See United States v. Fischbach and Moore, Inc.*, 576 F. Supp. 1384, 1390 (W.D. Pa. 1983).

In accordance with the foregoing, the motions are **GRANTED IN PART** as to the preservation of notes and **DENIED IN PART WITHOUT PREJUDICE** as to disclosure of such notes to Defendants.


g.     Miscellaneous Discovery

Defendants seek numerous categories of discovery, including information about the investigation, statements, documents and objects to be used as evidence against each individual Defendant, expert reports, and scientific evidence.  The government objects to any efforts to expand its discovery and/or disclosure duties.  The government acknowledges its responsibilities under the Jencks Act, *Brady*, *Giglio*, and Rules 12 and 16 of the Federal Rules of Criminal Procedure and represents that it has or will fully comply with those obligations.  Accordingly, to

the extent not directly addressed above, Defendants' discovery motions will be **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government. Defendants are entitled to challenge newly-produced information, but will not be permitted to raise tardy challenges to information that was disclosed by the government prior to the pretrial motions deadline. The Court notes that Defendants will also have the opportunity to assert appropriately targeted motions in limine.

10. Motion For Individual Voir Dire

Defendant Argyle asks the Court to conduct individual voir dire of each prospective juror and to sequester the remaining members of the panel during this process. The government contends that this motion is moot because the Court already follows such a protocol.

This member of the Court has followed, and will continue to follow, a jury selection procedure by which all of the prospective jurors are seated in the courtroom and asked a series of "yes/no" questions in open court. Any "yes" answers are then explored during individualized followup questioning in chambers, outside the hearing of the other prospective jurors. To the extent that Argyle seeks further sequestration or individualized questioning, the motion (ECF No. 208) is **DENIED**.

11. Motions to Suppress Searches of Homes and Statements of Harvey

Defendant Harvey seeks to suppress evidence found during simultaneous searches of two homes in Detroit, Michigan on March 8, 2012 (his mother's home at 8167 Coyle Street and his own home at 5838 Fineway). Harvey also moves to suppress subsequent statements he made

to law enforcement officers and a later search of the Fineway home on May 8, 2012 as fruit of the poisonous tree. On November 15, 2013 the Court conducted an evidentiary hearing on the motions, followed by post-hearing briefing.

There are two fact-based disputes regarding the March 8 search at Coyle street: (1) whether Harvey has standing to challenge the search of his mother's house; and (2) whether agents had probable cause to search a locked upstairs portion of the home, which may have had a different address, 8165 Coyle Street.[6] Harvey also contests the decision of the officers to break down the door to the second floor area, rather than using a key.

A. Standing at Coyle Street

To establish standing, the party contesting the legality of the search bears the threshold burden of establishing that he or she had a reasonable expectation of privacy in the property searched and the item seized. *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990). A co-resident of a shared dwelling and an overnight guest of a dwelling are typically held to have a reasonable expectation of privacy in that dwelling. *See e.g., Olson*, 495 U.S. at 97, 110 S.Ct. 1684; *United States v. Villegas*, 495 F.3d 761, 772 (7th Cir. 2007). Short-term guests and visitors do not have standing, even if they occasionally sleep over. *United States v. King*, 364 Fed. Appx. 781 (3d Cir. 2010) (non-precedential); *Warner v. McCunney*, 259 Fed. Appx. 476 (3d Cir. 2008) (non-precedential) (son did not have standing to challenge search of parents' home despite storing items there).

---

[6]Harvey's challenge to the March 8, 2012 search of 5838 Fineway is based on the "four corners" of the affidavit and does not require additional evidence.

Harvey was not an overnight guest at his mother's home on Coyle Street on the evening of March 7-8, 2012. To the contrary, Harvey was physically located in the early morning hours at his own home at 5838 Fineway, which he shared with his wife and children. The Court accepts that Harvey grew up as an only child at the Coyle Street address and still has his own bedroom; stored possessions and clothes there; had a key; had mail sent there; and sometimes stayed overnight. Such unrestricted access and the consent of his mother do not create standing for Harvey to challenge the search.

B.     Scope of Search at Coyle Street

Even assuming, arguendo, that Harvey has standing to challenge the search of the Coyle Street home, his motion to suppress evidence would be denied because the scope was proper. Defendant introduced photographs taken by an investigator some fourteen months after the search, in an effort to argue that there were two separate residences at the Coyle Street location. The photographs showed multiple reinforced doors in the interior of the structure, and two electric meters and hot water tanks.

The evidence is clear, however, and the Court finds, that in March 2012 there was only one residence. Barbara Harvey testified that she was the only occupant of the home at that time. She (and Defendant) had access to the entire structure. The post office showed only one dwelling and the agents testified, credibly, that they never saw a reference to 8165 Coyle during their surveillance. Ms. Harvey signed a consent to search all levels of the structure. In sum, the scope of the search, including the second floor and basement, was proper.

C.     Warrant for March 2012 Search at Fineway Street

On March 7, 2012, Magistrate M. Kiry Shannon authorized searches of the Fineway and Coyle Street homes based on an affidavit prepared by Detective Sergeant Mitchell J. Berlin. The affidavit described the investigation of Harvey which had been ongoing since November 2011, including a confidential informant who had provided reliable information in the past, trash pulls, tracing of telephone numbers to known drug traffickers, property records, and a financial analysis which reflected that Harvey had moved over $1,000,000 through Detroit casinos without any legitimate employment. The Court has no difficulty in concluding that the affidavit provided a substantial basis for the issuing magistrate to conclude that there was probable cause to search the Fineway home. *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

D.     Post-Arrest Statements to Law Enforcement

After the searches on March 8, 2012, Harvey was arrested and transported to the DEA Detroit field office. Harvey orally waived his Miranda rights, although he refused to sign the form, and agreed to answer questions. At the time, Harvey was not handcuffed, was free to move around the interview room, had received a drink of water and bathroom visit, and had taken a break to smoke a cigarette in the parking garage. Harvey never asked for an attorney and freely talked during a one-hour interview. In addition, Harvey accompanied officers on a car ride to point out the home of one of his alleged heroin suppliers.[7]

The officers told Harvey that they had found drugs, guns and other incriminating evidence at his mother's house and that he could give information to help himself. Harvey stated

_____

[7]A subsequent search of this home was unsuccessful.

that his wife and kids had nothing to do with drug trafficking. Many items had been seized that morning. A car was returned to Harvey's wife after he agreed to talk. At the end of the interview, Harvey was released and driven back home. He told officers that he would cooperate. Over the ensuing weeks, it became clear to officers that Harvey was not following through, which led to the decision to perform another search of Harvey's home in May 2012. The Court finds that Harvey's statements to officers were knowing and voluntary.

In sum, Harvey's motions to suppress evidence (ECF Nos. 213, 281) are **DENIED** in their entireties.


12.     <u>Motion in Limine Regarding Drug Trafficking Behavior (#201)</u>

Defendant Argyle moves the Court to preclude expert testimony regarding typical drug trafficking behaviors. The government, in response, contends that the motion is premature because it has not yet decided whether or not to introduce such evidence. In addition, the government contends that such evidence may be admissible by lay witnesses, pursuant to Fed. R. Evid. 701, without the need to designate an expert witness.

The Court agrees with the government that the motion is premature, and therefore, it is **DENIED WITHOUT PREJUDICE**. The Court anticipates that this may be the subject of motions in limine. The Court will reserve ruling on both Argyle's contention that such evidence is inadmissible and the government's argument that such testimony may be presented by a lay witness. *See United States v. Watson*, 260 F.3d 301, 306-07 (3d Cir. 2001) (experienced drug investigator able to testify "as an expert" regarding coded drug language).

13.     Government's Cross-Motion

The government has made a request for reciprocal discovery subject to disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1).  **The Court ORDERS Defendants to provide the government with the requested reciprocal discovery at least fourteen (14) days prior to trial.**

So **ORDERED** this 20th day of February, 2014.

BY THE COURT:


s/Terrence F. McVerry
United States District Court Judge

cc:     All counsel of record